McCarthy, J.
(concurring in part and dissenting in part). The majority is affirming the grant of summary judgment to plaintiff on the issue of liability of defendant American Towers, Inc. *1221 (hereinafter defendant) to maintain the roadway covered by an easement held by defendant on plaintiffs property. Based on the language of the easement, and because a question of fact exists as to the current state of the roadway, we respectfully disagree.
Courts determine the nature of an easement by construing the intent of the parties, primarily through the language of the instrument conveying the easement interest (see Real Property Law § 240 [3]; Phillips v Iadarola, 81 AD3d 1234, 1235 [2011]). “If there is an ambiguity as to what was contemplated by the terms of the grant, those terms ‘are to be construed most strongly against the grantor in ascertaining the extent of the easement’ ” (Ketchuck v Town of Owego, 72 AD3d 1173, 1174-1175 [2010], quoting Phillips v Jacobsen, 117 AD2d 785, 786 [1986]). The easement here states, in relevant part, that “the right of [g]rantee to maintain said road shall not be construed as a duty to conform to a maintenance standard higher than that previously observed by the [g]rantors, except that the [g]rantee in constructing [the] new road shall provide drainage facilities in order that the adjacent lands of the [g]rantors will not be flooded out by reason of the road grade.” The majority interprets this provision as imposing a perpetual obligation on defendant to maintain the road so as to prevent damage to plaintiffs adjacent property by way of flood and erosion.
Based on our interpretation of this provision, we believe it presents two issues. First, the easement states that the grantee shall not be required to maintain the road to a standard any higher than that previously maintained by the grantors, who were plaintiffs family members and predecessors in interest. Therefore, the question under this clause of the easement is whether the road’s current condition is equivalent or superior to the condition it was in under the grantors, before the easement was created in 1949, because, in order to comply with the terms of the easement, defendant would only have to maintain the road in such condition. A question of fact exists on this issue, such that summary judgment for plaintiff is not warranted. Plaintiffs testimony indicates that prior to construction of the paved road, it was a “[bjeaten down” dirt road, “wasn’t a good road at all,” and the owners did not maintain it. Plaintiff also testified that he and his family used the dirt road, indicating that it was at least passable and in usable condition.
The paving of the road undoubtedly improved its condition, but questions exist as to the current condition of the roadway, as the pavement has allegedly deteriorated, so a comparison must be made between the current state of the roadway and its *1222 condition prior to the road being paved by the grantee. On several occasions in his deposition testimony, plaintiff indicated that the road was still being used, implying that it was still passable. Indeed, he testified that “[i]t’s used even today. One of my tractors might go over it today” and the last time it had been used by one of his tenants was possibly the day prior to his deposition. Plaintiff also testified that the condition of the road was better at the time of his deposition than it was prior to defendant AT&T Corporation paving the road. Yet, at other times, plaintiffs testimony seemed to imply that the road, even though paved, may be in worse condition than it originally was, due to it being dangerous or impassable. Specifically, he testified that 90% of the roadway needed repairs, “It’s dangerous,” and that a tenant “has to avoid these bad spots in the road, and he does and that puts him out off the right-of-way . . . for this particular area he’s not on the road.” Further, affidavits submitted by both plaintiff and a roadway repairperson, who provided a cost estimate for needed repairs to the road, indicate that the roadway is “not usable.” It could be argued that an impassable paved road is inferior to a passable dirt road. Consequently, it is not clear whether defendant has complied with the terms of the easement by maintaining the road to at least the standard maintained by the grantors. While defendant has a minimal maintenance obligation, a factual question exists as to whether defendant has breached that obligation, precluding a grant of summary judgment on the issue of liability.
As to the second issue, the second clause of the above-quoted easement provision affirmatively obligates the grantee to install drainage facilities in order to prevent flooding of the lands adjacent to the roadway due to the road grade. Importantly, however, the language specifically limits this obligation, making it applicable only to new road construction. The language does not provide that defendant would have a continuing duty to maintain drainage facilities, but rather only requires defendant' to install drainage facilities when “constructing [the] new road.” If, arguendo, we broadly read this second clause about drainage facilities as interconnected to the first clause about road maintenance, the language of the easement could possibly be considered ambiguous. That possible ambiguity would exist as to whether the provision requires defendant to install drainage facilities in conjunction with constructing the new road and provided for no continuing maintenance obligation with regard to the drainage facilities, or rather whether it requires defendant to perpetually maintain any drainage facilities once installed. Construing any ambiguities “ ‘most strongly against [plaintiff] in ascertaining the extent of the easement,’ ” as we *1223 must (Ketchuck v Town of Owego, 72 AD3d at 1174-1175, quoting Phillips v Jacobsen, 117 AD2d at 786), we are therefore constrained to find that the easement required defendant to install drainage facilities when it initially constructed the road and imposed no further maintenance obligation in that regard. Thus, the majority reaches an overbroad conclusion by holding that defendant had a perpetual obligation to maintain the road and its drainage facilities “in sufficiently good repair to prevent flood and erosion damage to plaintiffs adjacent property.”[3]
For these reasons, Supreme Court erred in granting plaintiff summary judgment on the issue of liability. Defendant is entitled to a trial on the factual issues raised regarding the first clause of the provision and the condition of the road in 1949 and currently.
Malone Jr., J., concurs. Ordered that the order is affirmed, with costs.

. While we see no reason to go beyond the language of the relevant maintenance provision of the easement, when the majority does so it views the indemnification provision through a narrow lens and reaches an unwarranted conclusion. The majority interprets that provision as proof that the parties intended to hold defendant responsible for all costs related to road maintenance. But the indemnity provision could be read to hold defendant liable to plaintiff if defendant does not meet its obligation to maintain the road to a standard equivalent to its condition prior to the easement (i.e., indemnify plaintiff for the cost of plaintiff repairing the road). The provision could also mean that if defendant voluntarily maintains the road in a superior condition — perhaps for defendant’s own convenience — but does so negligently, defendant must indemnify plaintiff for any related damages (e.g., personal injury claims against plaintiff by one of his tenants who was injured on the negligently maintained road). Considering the various possible interpretations of the indemnification provision, it should not be relied upon as proof of the parties’ intent under the maintenance provision.